Platzer, Swergold,
Goldberg, Katz & Jaslow, LLP
*Proposed Counsel for the Debtor*
475 Park Avenue South, 18th Floor
New York, New York 10016
Tel.: (212) 593-3000
Clifford A. Katz, Esq.
Teresa Sadutto-Carley, Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x
In re:

246-18 Realty LLC,

                               Debtor.
--------------------------------------------------------

Chapter 11
Case No. 23-10796 (PB)
Jointly Administered

## APPLICATION IN SUPPORT OF ENTRTY OF AN ORDER AUTHORIZING THE DEBTOR TO ENTER INTO CERTAIN APARTMENT SURRENDER AGREEMENTS WITH ITS TENANTS AND REJECTING THE EXECUTORY CONTRACTS WITH THE DEBTOR'S RESIDENTIAL TENANTS AND RELATED RELIEF

**TO: THE HONORABLE PHILIP BENTLEY,**
     **UNITED STATES BANKRUPTCY JUDGE:**

     246-18 Realty LLC, the debtor and debtor in possession herein (the "**Debtor**"), by and

through its proposed undersigned counsel Platzer, Swergold, Goldberg, Katz & Jaslow, LLP, hereby

moves this Court for an Order Authorizing the Debtor to Enter Into Certain Surrender Agreements

and Rejecting Executory Contracts with the Debtor's Residential Tenants and Related Relief (the

"**Motion**"), and respectfully sets forth and represents as follows:

## PRELIMINARY STATEMENT

     As more fully set forth in the Declaration of Joseph Nabavi, pursuant to Local Bankruptcy

Rule 1007-4 (the "Local Rule Declaration"), which is incorporated herein, this bankruptcy case was

precipitated by the need to preserve the Debtor's property located at 244-246 West 18th Street, New York, New York (the "**Property**") for the benefit of all creditors and other stakeholders in response to the attempted sale by 244 246 W 18 SME LLC (the "**Prepetition Lender**") of the equity interest in the Debtor, held by co-debtor 244/246 Holdco LLC. Since the Petition Date, the Debtor has been keeping the Property secure and 11 out of the 12 apartments are rented.  In addition, during this period, the Debtor has been negotiating with both a possible joint venture partner and the Prepetition Lender with the hope of securing both additional equity and a construction financing loan of approximately 32 million dollars to complete a previously planned development project to transform the Property from a mixed-use apartment building to a modern condominium complex.  To that end, the Debtor remains committed to working with the Prepetition Lender and other constituents on either formulating a plan of reorganization that will allow for the payment to creditors and development of the Property into a modern condominium complex or dismissal of the case and the satisfaction of the Prepetition Lender's and creditors' claims and develop the Property.  Either of these steps require as a precondition that the Debtor's Property be free of all tenancies and so the Debtor must reject its residential leases and start the process of vacating the premises of tenants, subject to pre-petition lease agreements with the Debtor. Accordingly, the Debtor seeks this Court's authority to enter into Surrender Agreements (the "Agreements") in substantially the form as reflected on the **attached Exhibit "A"**, with its tenants in order to facilitate the tenant's timely move from the Property.  The Debtor's entry into the Agreements are in furtherance of the Debtor's business judgment on how best to proceed and is in the best interest of the Debtor's estate and all its stakeholders.

## JURISDICTION

1.      This Court has jurisdiction over this Emergency Motion pursuant to 28 U.S.C. § 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2).

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The legal authority for the relief requested in this Motion is Bankruptcy Code Sections 105(a), 363 and 365, Federal Rules of Bankruptcy Procedure 9006(c)(1) and 6006(f), 4001, and Local Bankruptcy Rule 9006-1(b).

## BACKGROUND

4.      On May 19, 2023, (the "**Petition Date**") the Debtor filed a voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code.

5.      The Debtor has continued to manage its assets and business affairs as a debtor and debtor in possession.  No trustee or examiner has been appointed in this case.

6.      As of the date hereof, an Official Committee of Unsecured Creditors has not been formed.

## THE DEBTOR AND ITS BUSINESS OPERATIONS

7.      The Debtor owns real property located at 244-246 West 18th Street, New York, New York. The Property is comprised of two real estate parcels. The first parcel, located at 244 West 18th Street, New York, New York ("**244**") is a building comprised of single residential occupancy units and is currently vacant. The second parcel is located at 246 West 18th Street, New York, New York ("**246**") and is a multi-family residential apartment building comprising of 12 residential apartments units. Currently 11 of these units are rented.

8.      The Debtor is indebted to the Pre-Petition Lender by virtue of a certain Loan Agreement, Amended, Restated, and Consolidated Note, Mortgage, and Assignment of Leases and

Rents and related documents (the "**Loan Documents**") initially executed by and between the Debtor and Emerald Creek Capital 3 LLC, as administrative agent and various other lenders dated on or about October 30, 2020 (collectively "**Emerald**") in the principal amount of $8,000,000.

9.      Upon information and belief, subsequent thereto, Emerald assigned the Loan Documents to the Pre-Petition Lender. The indebtedness to the Pre-Petition Lender as of the Petition Date is no less than $8,000,000.00.

10.     The Debtor along with its corporate parent, 244/246 Holdco LLC ("Holdco") commenced their Chapter 11 cases to preserve their interest in the Property in advance of the proposed sale of Holdco's membership interests, previously pledged to Emerald and scheduled to be sold by the Pre-Petition Lender pursuant to Article 9 of the Uniform Commercial Code (the **"Sale").**

11.     The Debtor and Holdco commenced their Chapter 11 cases in order to stay the Sale, safeguard its interest in the Property and its ability to continue to operate, and to otherwise maintain, protect, and preserve its Property for its intended purpose, to develop the Property into modern condominiums.

**PRINCIPAL TERMS OF AGREEMENTS**

12.      As reflected on the proposed Agreements annexed hereto and incorporated herein as **Exhibit "A"**. The Agreements are designed to provide the Debtor with the flexibility to provide rental credits and negotiate waivers amounts as may be agreed and in the Debtor's business judgement to facilitate the Debtor's tenants' relocation to alternative living space. As noted herein, the form of Agreements are annexed as Exhibit "A" to this Motion. The Court and parties in interest are referred to the Agreement for a full recitation of its terms.  In addition, by this Motion the Debtor request the discretion to provide some monetary stipends in exchange for the tenant's agreement to vacate the Property and terminate their rights under their residential leases.

4

13.     Most importantly, given the Debtor's limited cash availability, any and all compensation for tenants must be in accordance with the Debtor's construction budget and with the consent and acknowledgement of the Debtor's funding sources.

### NEED FOR EXPEDITED RELIEF

14.     As more fully set forth in the Debtor's Motion To Shorten Notice and accompanying declarations, incorporated herein by reference, it is vital that the Debtor be able to immediately enter into the Agreements and reject its residential executory contracts with its tenants in order to be in a position to promptly close on any construction lending and equity investment which require; (i) the Property to be free of tenants, and (ii) an expeditious closing in order to lock in currently rising interest rates and commit the funds allocated to the construction project.

15.     Most importantly, the Debtor's seek to provide its tenants with the maximum amount of time possible to find a new apartment, negotiate a new lease and move.  Given the age of some of the Debtor's tenants and the significant amount of time spent living on the Property, this concern cannot be understated.

### REJECTION OF RESIDENTIAL TENANTS' LEASES

16.     A debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). This section is intended "to permit the trustee or debtor-in-possession to use valuable property of the estate and to renounce title to and abandon burdensome property." *In re Republic Airways Holdings Inc*., 547 B.R. 578, 582 (Bankr. S.D.N.Y. 2016) (*quoting Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp*.), 4 F.3d 1095, 1098 (2d Cir. 1993)); *See also, In re Bildisco,* 465 U.S. 513, 528 (1984) ("[T]he authority to reject an executory contract is vital to the basic purpose to a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that

can impede a successful reorganization.").

17.    A debtor's rejection of an executory contract is governed by the "business judgment" standard. *See In re Klein Sleep Prods., Inc.,* 78 F.3d 18, 25 (2d Cir. 1996). Under the business judgment standard, a court must approve a debtor's business decision unless that decision is the product of bad faith, whim or capriciousness. *See, Klein Sleep* at 25. *See also NLRB v.Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) ("business judgment" proper standard used to approve rejection of executory contracts).

18.    "[T]he court should not interfere with or second-guess the debtor's sound business judgment unless and until evidence is presented that establishes that the debtor's decision was one taken in bad faith or in gross abuse of its retained business discretion." *In re Wheeling Pittsburgh Steel Corp.,* 72 B.R. 845,849 (Bankr. W.D. Pa. 1987.

19.    In this case the decision to reject the residential lease contract with tenants are well within the sound business decision of the debtor. First, in order to obtain the necessary construction financing and equity investment, the Property must be free of tenants and second, the Property is actually more attractive to potential buyers and more valuable free of all tenancies.

20.    However, Section 365 (h)(1) provides:

(A) If the trustee rejects an unexpired lease of real property under which the debtor is the lessor and—

(i) if the rejection by the trustee amounts to such a breach as would entitle the lessee to treat such lease as terminated by virtue of its terms, applicable nonbankruptcy law, or any agreement made by the lessee, then the lessee under such lease may treat such lease as terminated by the rejection; or

(ii) if the term of such lease has commenced, the lessee may retain its rights under such lease (including rights such as those relating to the amount and timing of payment of rent and other amounts payable by the lessee and any right of use, possession, quiet enjoyment, subletting, assignment, or hypothecation) that are in or appurtenant to the real property for the balance of the term of such lease and for any renewal or extension of such rights to the extent that such rights are enforceable under applicable nonbankruptcy

law.

21.     As a result, even assuming this Court authorizes the Debtor's rejection of its residential leases, the tenants have a right to remain on the Property which necessitates the Debtor's authority to enter into the Agreements to get the tenants to voluntarily vacate the Property.

22.     Bankruptcy Rule 6006(f) requires that a motion to reject which involves multiple contracts and parties:

"(1) state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;
(2) list parties alphabetically and identify the corresponding contract or lease;
(3) specify the terms, including the curing of defaults, for each requested assumption or assignment;
(4) specify the terms, including the identity of each assignee and the adequate assurance of future performance by each assignee, for each requested assignment;
(5) be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases; and
(6) be limited to no more than 100 executory contracts or unexpired leases."

23.     It is respectfully submitted **that Exhibit "B"** annexed hereto and incorporated herein is a list of the individuals subject to residential lease agreements for which the Debtor seeks to reject in compliance with Bankruptcy Rule 6006(f).

**AUTHOIRITY TO ENTER INTO THE SURRENDER AGREEMENTS**

24.     Ample authority exists for the granting the Debtor authority to enter into the Agreements on such financial terms acceptable to the Debtor.  Section 363 of the Bankruptcy Code, which authorizes a debtor to use or sell assets of the estate other than in the ordinary course of business, free and clear of liens, claims and encumbrances, provides, in relevant part, as follows:

(b)(1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate ...

*See* 11 U.S.C. § 363(b)(1).

25.     The standard for approval under Section 363(b) is whether the debtor exercised

sound business judgment. *See In re Glob. Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y.

2003); *see also In re Borders Grp., Inc.*, 453 B.R. 459, 473 (Bankr. S.D.N.Y. 2011). The business

judgment rule "is a presumption that in making a business decision the directors of a corporation

acted on an informed basis, in good faith and in the honest belief that the action taken was in the

best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res.,*

*Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992).

In re Golden Seahorse LLC, 2023 Bankr. LEXIS 631, *19

26.     As Bankruptcy Judge Lane said in the case, *In re 8 W. 58th St. Hosp., LLC*, 2017

Bankr. LEXIS 2194, *7-10, "[T]he case law under Section 363 provides that "[t]he business

judgment rule's presumption shields corporate decision-makers [*8]  and their decisions from

judicial second-guessing when the following elements are present: (1) a business decision, (2)

disinterestedness, (3) due care, (4) good faith, and (5) according to some courts and commentators,

no abuse of discretion or waste of corporate assets. "*In re Genco Shipping & Trading Ltd.*, 509

B.R. 455, 464 (Bankr. S.D.N.Y. 2014) (quoting *In re Integrated Res., Inc.*, 147 B.R. at 656).

27.     It is a well-settled bankruptcy law principle that a debtor-in-possession enjoys broad

discretion in operating its business. In light of this broad discretion enjoyed by a debtor-in-

possession, the Debtor submits that in evaluating the Debtor's request to enter into these

Agreements, this request should be viewed in light of the overriding goal of Chapter 11, which is

to enable the Debtor to reorganize its financial affairs for the benefit of the estate and its creditors

and stakeholders. " This primary goal of rehabilitation has been recognized by the Supreme Court

in *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 104 S. Ct. 1188, 79 L. Ed. 2d 482 (1984).

28.     The Bankruptcy Code carries a presumption of reasonableness as applied to business

8

decisions made by a debtor-in-possession. Where management of a debtor "articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *See In re Johns-Manville Corp*., 60 B.R. 612 (Bankr. S.D.N.Y. 1986. "The business judgment should be left "to the board room and not to the Court*." In re Simasko Products Co*., 47 B.R. 444, 449 (D. Colo. 1985).

29.    Absent this standard, courts would constantly be involved in complex corporate decision making and reviewing business decisions on a detailed level. In effect, bankruptcy courts would be managing the debtor's business contrary to the clear intent of the Bankruptcy Code.

30.    As this Court has just recently said in, *In re Golden Seahorse LLC*, 2023 Bankr. LEXIS 631, *19-21, "the Lenders bear a very high burden of challenging the Debtor's exercise of business judgment. The Lenders acknowledge at Page 13 of their objection that the leading Second Circuit case holds that the business judgment standard is satisfied if the Debtor presents "some articulated business justification." *Comm. of Equity Sec. Holders v. Lionel Corp*. (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983)".

31.    In this case, ample business justification exists and the Debtor has considered all alternatives and determined this is the best course of action. There is a clear and well-articulated reason to enter into the Agreements now, namely, to be in a position to obtain and then promptly close on funds necessary for the Debtor's rehabilitation. In addition, the entry into these Agreements such that the Property is thereafter vacant will actually increase the value Property, in the event the Debtor is unsuccessful and required funding does not close.

### NOTICE OF MOTION

COMPLIANCE WITH BANKRUPTCY RULE 6006(f)

32.     Bankruptcy Rule 6006(f) establishes requirements for a motion to reject multiple contracts that are not between the same parties.  It is respectfully submitted that Exhibit "B" annexed hereto is in compliance with Bankruptcy Rule 6006(f) and provides adequate notice to the tenants of the residential leases to be rejected.

BANKRUPTCY RULES 6004(a) AND (h)

33.     To implement the foregoing successfully, the Debtor request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances and waive the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). Accordingly, ample cause exists to justify finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h).

34.     Under the Bankruptcy Rules, a motion to approve the entry into the Agreement outside the ordinary course, requires at least twenty-one (21) days. However, as set forth in the Debtor's Motion to Shorten Time for a Hearing, and supporting documents, the Debtor requests the Court schedule a hearing to consider the Motion on August 1, 2023, approximately 14 days' notice in order to provide the maximum amount of time for tenants to relocate without jeopardizing the Debtor's potential financing.

35.     No previous application for the relief requested herein has been made to this Court, or any other Court.

36.     The Debtor requests that the requirement of filing a separate memorandum of law be waived, as no novel issues of law are raised by this Application.

10

**WHEREFORE**, for all of the foregoing reasons, the Debtor respectfully requests the Court grant the relief requested in the Motion and grant the Debtor such other and further relief as this Court deems just and proper.

Dated: New York, New York
      July 14, 2023

                          PLATZER, SWERGOLD, GOLDBERG KATZ &
                          JASLOW LLP
                          Counsel for the Debtor

                          By: */s/ Clifford Katz*
                              Clifford A. Katz
                          A Member of the Firm
                           475 Park Avenue, South, 18th Floor
                          New York, New York 10016
                          T: (212) 593-3000
                          ckatz@platzerlaw.com