**AVISON YOUNG**

Exhibit "A"

**EXCLUSIVE RIGHT TO SELL AGREEMENT - BANKRUPTCY**

246-18 Realty LLC ("**Owner**") appoints Avison Young – New York, LLC ("**Avison Young**") as its sole agent and grants to Avison Young the exclusive right to sell the real property described below.

1. **PROPERTY:** Located at 244-246 W 18th Street in the City of New York, County of New York, State of New York, including all buildings and any improvements and all fixtures and appurtenances (collectively the "**Property**").

2. **TERM:** Subject to the approval of United States Bankruptcy Court ("**Bankruptcy Court**") adjudicating the Chapter 11 Bankruptcy case of 246 18th Realty LLC ("**Bankruptcy Case**"), this Agreement begins on the date of execution hereof by Owner, and continue through confirmation of a plan of reorganization in the Bankruptcy Case and the closing of all transactions contemplated herein, and shall end no later than January 2, 2024 ("**Term**"). if during the Term negotiations concerning a potential sale of the Property are commenced and those negotiations are continuing as of the expiration of the Term, the Term will automatically extend with respect to that potential transaction concurrently with such negotiations. Owner may terminate this Agreement with thirty (30) days' written notice to Avison Young.

3. **SERVICES:** Avison Young will enlist the efforts of its firm to secure satisfactory prospective purchasers for the Property on such terms as may be acceptable to Owner. Avison Young may solicit the cooperation of other licensed real estate brokers. Avison Young will assist Owner in its negotiation of the terms of a sale agreement procured hereunder.

4. **AGENCY RELATIONSHIP DISCLOSURE:** By entering into this Agreement, an exclusive agency relationship exists between Owner as principal and Avison Young as agent. Avison Young designates James Nelson and the Tri-State Investment Sales Team as Owner's designated agent(s) ("Designated Agents") concerning the Property. Avison Young shall not be permitted to substitute other representatives as designated agent(s) without the prior written consent of the Owner.

5. **OWNER REFERRALS:** Owner will refer to Avison Young all inquiries and offers received by Owner regarding the Property, and Avison Young shall assist Owner with negotiations in relation thereto.

6. **ADVERTISING:** Owner authorizes Avison Young to advertise and to place signage on the Property. All advertising and promotion will be done at Owner's expense pursuant to a program and budget agreed upon by the parties, not to exceed $10,000.00. Owner consents to the collection, use, and disclosure of information and photographs of the Property by Avison Young for the purpose of listing and marketing the Property. Owner represents that it has all rights and authorizations necessary with respect to all advertising materials supplied to Avison Young. Owner grants to Avison Young a nonexclusive, irrevocable, royalty-free license to use such material for marketing purposes.

7. **COMMISSION:** If during the Term, Owner sells all or any interest in the Property through any means, Owner will pay to Avison Young a commission computed in accordance with the attached Commission Schedule. Commissions shall be subject to the approval of the Bankruptcy Court, which requirement may be satisfied by terms of an order approving a sale or exchange transaction.

    A commission shall be due and owing to Avison Young if during the Term or any extension thereof: (i) the Property, any Owner interest therein, or portion of the Property, is sold, transferred or conveyed in any way; or (ii) any contract for sale, transfer or conveyance of the Property or any interest therein, including without limitation, execution of a joint venture, ground lease, or the granting of an option or right of first refusal, is made directly or indirectly. The commission will be paid upon the earlier of ninety (90) days from the date of execution of the transaction agreement, or through escrow upon the closing of the transaction.

    Within thirty (30) days from the end of the Term, Avison Young will provide to Owner a list of Prospects, as defined below ("**List**") to whom the Property was submitted (by Avison Young, Owner, or any third party) during the Term. If

during the Term, or within three hundred sixty (360) days of expiration or termination thereof, a prospective purchaser (or any subsidiary, parent, affiliate or other related party thereof) (each a "**Prospect**") appearing on the List, either: (i) enters into a transaction agreement or option to purchase the Property; or (ii) negotiations to purchase the Property with such Prospect either continue, commence, or resume within such three hundred sixty (360) day period after the end of the Term, and the transaction thereafter closes, Avison Young will be deemed to have earned, and Owner will pay to Avison Young, a commission as provided above as if such transaction had closed during the Term.

For purposes of this Agreement, the terms "**sale**," "**sell**," or "**sold**" refers to and includes any sale, transfer, or other disposition of the Property, or any interest therein, including but not limited to any sale, lease, ground lease, exchange, transfer, eminent domain, condemnation, joint venture, or conveyance of a direct or beneficial interest in a joint venture, partnership, trust, corporation, or other entity holding title to or controlling the Property.

Notwithstanding anything herein to the contrary, NO commission shall be due or paid under this Agreement to Avison Young in the event the Owner enters into a transaction or contract of sale or joint venture with Sam Suzuki, Sperry Capital, SIRE Group, or Reuben Pinner or Ver Development within the first thirty (30) days after the approval of this agreement by the Bankruptcy Court. Thereafter, Avison Young will be paid commissions on sale transactions calculated by multiplying the Gross Sales Price or there is no sale price, the amount paid to the Prepetition Lender by 1% after the first thirty (30) days from the approval of this agreement by the Bankruptcy Court.

8. **OUTSIDE BROKERS:** "**Outside Broker**" means any broker other than the Designated Agent(s). If an Outside Broker is representing a purchaser, Avison Young will request such Outside Broker to agree to accept the commission computed and payable in accordance with the Commissions Schedule. If the Outside Broker agrees, Owner will pay Avison Young the full commission therefrom Avison Young will pay to the Outside Broker its agreed upon portion of such commission. If the Outside Broker does not agree, Avison Young may direct such Outside Broker to negotiate directly with Owner.

9. **ALTERNATIVE TRANSACTION:** If a proposed sale evolves into any other transaction, including without limitation a lease, ground lease, exchange, option, development, installment sale, right of first refusal, or build-to-suit transaction, then Avison Young will be deemed, without any further acts or amendment hereto, as Owner's sole and exclusive agent for such transaction, and Avison Young will be entitled to a commission on such transaction under the terms hereof. In such transaction, the term "**Owner**" herein shall mean the title of Owner in the transaction.

10. **OTHER CLIENTS:** Avison Young may represent other owners of property and Prospects, and Owner consents to such dual representation. Avison Young will not disclose the confidential information of one principal to the other.

11. **COMMERCIAL REAL ESTATE BROKER LIEN ACT**: For purposes of this contract, the parties understand and agree the Broker's commission is deemed to be a share of the purchase money received by Seller, and Broker shall have a lien on the funds and a lien upon the Property until the commission is paid.

12. **FAILURE TO PAY:** In the event either party institutes legal action to enforce its rights under this Agreement, the prevailing party will be entitled to recover its reasonable attorneys' fees and other costs so incurred from the non-prevailing party. Any portion of a commission not paid will bear interest at the maximum rate allowable by law.

13. **AUTHORITY:** Owner represents and warrants to Avison Young that: (a) Owner has no knowledge of toxic, contaminated or hazardous substances, or any defective conditions, in, on, or about the Property; (b) Owner has the legal authority to execute this Agreement; and (c) no person or entity has any right to purchase or lease the Property or to acquire an interest therein by virtue of option, right of first refusal or right of first offer.

14. **PROFESSIONAL ADVICE:** Owner represents and warrants that in determining the financial soundness and suitability of any Prospect, Owner shall rely solely upon Owner's own investigation and evaluation, and that any decision by Owner to enter into and close any sale or other transaction shall be a product of Owner's own investigation and evaluation and not upon any representation by, or opinion of, Avison Young. Owner covenants that it shall not rely upon on Avison Young in the Owner's discharge of its investigation and evaluation of any Prospect.

15. **NON-DISCRIMINATION:** It is illegal for either Owner or Avison Young to refuse to present, sell, or lease real property to any person because of any class protected by applicable law.

16. **INDEMNIFICATION:** Owner shall defend, indemnify and hold Avison Young, its affiliates, and each of their respective officers, directors, employees, independent contractors, and representatives against any and all third-party actions, claims, damages, disputes, litigation, loss, judgments, liabilities, expenses, fines, contributions, charges, injuries, demands, and costs together with reasonable attorneys' fees, arising out of or relating to: (i) damage or injury to person or property resulting from or occurring on or about the Property, except to the extent attributable to the gross negligence or willful misconduct of Avison Young; and (ii) false information concerning the Property supplied by Owner, or Owner's failure to provide Avison Young with material information, including material Property defects.

17. **LIMITATION ON LIABILITY:** Except with respect to gross negligence, willful misconduct, or fraud, at no time will the total liability of Avison Young for any breach or any violation of this Agreement, or for any error or omission in the performance provided for herein, exceed the amount of the commission paid from Owner to Avison Young for the subject transaction in which the alleged liability arose. In no event shall either party be liable to the other party for any punitive, exemplary, special, indirect, incidental or consequential damages (including but not limited to lost profits or lost business opportunities) arising out of or relating to this Agreement, regardless of the legal theory under which such damages are sought, and even if the party has been advised of the possibility of such damages or loss.

18. **TAX:** Internal Revenue Code Section 1445 requires that buyers of any interest in any real property located in the United States withhold and pay over the Internal Revenue Service a portion of the purchase price unless the buyer can adequately establish that the seller is not a foreign individual or entity.

19. **CONFIDENTIAL INFORMATION**: Avison Young may share Confidential Information (as defined below) with Prospects provided that such Prospect enters into a confidentiality agreement not to further share such Confidential Information with persons other than such Prospect's authorized representatives. The term "Confidential Information" shall mean and include all information, financial or otherwise, relating to the Property that is furnished to Avison Young by Owner at any time, other than such information that: (i) is generally available to Avison Young or the general public or otherwise known by Avison Young or the general public other than due to a breach of Avison Young's obligations under this paragraph; (ii) can be shown to have been independently acquired or developed by Avison Young or others without a violation of any provisions of this paragraph or without use of any Confidential Information; or (iii) is required to be disclosed pursuant to any applicable law, rule, regulation, or court order.

20. **BANKRUPTCY SPECIFIC PROVISIONS**:

    A. Notwithstanding anything to the contrary herein:

    1. All requests of Avison Young for payment of indemnity shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Bankruptcy Court to ensure that payment of such indemnity conforms to the terms of this Agreement, and is reasonable based on the circumstances of the litigation or settlement in respect of which indemnity is sought, provided, however, that in no event shall Avison Young be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct;

    2. In no event shall Avison Young be indemnified if Owner or a representative of the Property or estate, asserts a claim for, and a court determines by final order that such claim arose out of, Avison Young's own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct; and

    3. In the event that Avison Young seeks reimbursement for attorneys' fees from the Owner pursuant to the indemnity provisions herein, the invoices and supporting time records from such attorneys shall be included in Avison Young's own applications for approval of indemnity payments (both interim and final) and such invoices and time records shall be subject to the United States Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of Sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under Section

      327 of the Bankruptcy Code and without regard to whether such attorney's services satisfy Section 330(a)(3)(C) of the Bankruptcy Code.

   B. Owner also agrees that Avison Young, its affiliates, and their respective directors, officers, employees, agents, representatives and controlling persons shall not be liable (whether directly or indirectly, in contract or tort or otherwise) to the owner or its security holders or creditors, for any matter, cause or thing related to or arising out of the engagement of Avison Young pursuant to, or the performance by Avison Young of the services contemplated herein, except to the extent that Avison Young is found in a final judgment by a Court of competent jurisdiction to have acted or failed to act in bad faith or with gross negligence or willful misconduct in performing the services described in this Agreement.

   C. Avison Young shall have no right to file a lien or affidavit of entitlement against the Property under any applicable law or regulation now or hereunder in effect. Avison Young shall immediately discharge any lien or affidavit of entitlement in violation of the foregoing.

   D. Avison Young shall provide Owner with a written status report every ten (10) days following entry of a Bankruptcy Court Order authorizing its engagement.

   E. This Agreement is subject to Bankruptcy Court approval and shall not be binding unless and until such approval is obtained.

21. **MISCELLANEOUS:** The failure by a party to exercise any right hereunder shall not operate as a waiver of such party's right to exercise such right or any other right in the future. This Agreement is binding upon the parties and their respective successors and assigns. The terms Owner, Prospect, and purchaser include parents, affiliates, subsidiaries successors, assigns, and nominees. In the event that any provision of this Agreement shall be held to be invalid or unenforceable, such ruling shall not affect the validity or enforceability of the remainder of the Agreement in any respect whatsoever. Owner consents to Avison Young's describing and publishing its role in any transaction executed pursuant to this Agreement, subject to Owner's reasonable editorial approval of such publicity. Any authorization or approval of Owner as required by the terms of this Agreement may be effectuated by an email from Owner or its authorized designee, and such email approval shall be deemed written approval for the purposes of this Agreement. Any approval or notice required of either party hereunder may be effectuated and satisfied by email. This Agreement may be executed in counterparts, each of which constitutes an original instrument and all of which constitute one and the same instrument. The parties may exchange facsimile or electronic counterpart signature pages of this Agreement, and such facsimile or electronic counterparts shall be considered an original counterpart.

22. **ENTIRE AGREEMENT:** This Agreement constitutes the entire agreement between Owner and Avison Young and supersedes all prior discussions. Any amendment or modification to this Agreement must be in writing and executed by each party. All terms herein have been determined as a result of negotiation between Avison Young and Owner.

23. **REPRESENTATION AND WARRANTY REGARDING TERRORISM:** Each party warrants and represents to the other party, that each party, and all persons and entities owning (directly or indirectly) an ownership interest in each party: (a) is not, and shall not become, a person or entity with whom Avison Young is restricted from doing business with under regulations of the Office of Foreign Asset Control ("**OFAC**") of the Department of the Treasury or under any statute, executive order, or other governmental action; and (b) is not knowingly engaged in, and shall not knowingly engage in, any dealings or transactions or be otherwise associated with such persons or entities described in provision (a) above.

24. **GOVERNING LAW:** This Agreement is executed and intended to be performed in the State of New York, and the laws of New York shall govern its interpretation and effect. The parties to this Agreement waive trial by jury with respect to matters relating to its interpretation and enforcement. The Bankruptcy Court has and shall retain exclusive jurisdiction to hear and determine all matters arising from the implementation or execution of this Agreement. Any and all issues, disputes, claims or causes of action which relate or pertain to, or result or arise from, this Agreement or Avison Young's services hereunder, shall be settled by the Bankruptcy Court.

[*Signature Page Follows*]

Each party acknowledges that it has received and understands this Agreement and the attached Commissions Schedule.

| **OWNER**: | **AVISON YOUNG**: |
|---|---|
| 246-18 Realty LLC | AVISON YOUNG – NEW YORK, LLC |
| By: _____ | By: _[signature]_ |
| Name: _____ | Name: _James P. Nelson_ |
| Its: _____ | Its: _Broker of Record_ |
| Date: _____ | Date: _7-20-2023_ |

**COMMISSIONS SCHEDULE**

1. **SALE COMMISSION RATES:**
OPTION 1: Avison Young will be paid commissions on sale transactions calculated by multiplying the Gross Sales Price by 2.5% in the event of a direct sale or 3% in the event that there is an Outside Broker.

2. **GROSS SALE PRICE:** The commission shall be computed in accordance with the above rates based upon the gross sale price, which shall include any mortgages, loans or other obligations of Owner which may be assumed by Purchaser or which Purchaser takes title "subject to," and any purchase money loans or mortgages taken back by Owner.

3. **PURCHASE OPTION:** If Owner grants a purchase option, Avison Young will be paid a commission at the above rate on the option price as and when amounts are payable for the option (and for extensions thereof). Upon closing of the sale of the Property to the Optionee, whether pursuant to the terms of said option or otherwise, Avison Young will be paid a commission at the above rate on the total sale price (excluding any amount paid for the option and applied to the sales price).

4. **TIME OF PAYMENT:** The commission will be paid in full at the time of the closing or transfer of title to the Property. In the event of sale of the Property or an installment purchase contract, the entire sales commission are due Avison Young at the execution of the installment sale contract.

5. **DEPOSIT:** In the event title does not close and the deposit is retained by the seller, the commission to be paid Avison Young will be either one-half (1/2) of the amount of the deposit, or the regular commission computed as set forth above, whichever is less.